Polyclad v. MacDermid                    CV-99-162-M    02/13/01

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Polyclad Laminates, Inc.,
and Fry Metals, Inc., d/b/a
PC Fab Division of Alpha Metals, Inc.,
      Plaintiffs

      v.                                    Civil No. 99-162-M
                                            Opinion No. 2001 DNH 029
MacDermid, Inc.,
      Defendant



                            O R D E R


      Polyclad Laminates, Inc., the exclusive licensee of United

States Patent No. 5,800,859 (the "'859 patent") and Fry Metals,

Inc., doing business as PC Fab Division of Alpha Metals, Inc.,

bring this patent infringement action against MacDermid, Inc.

MacDermid moves the court to conduct a hearing, pursuant to

Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996), to

receive evidence and argument concerning the construction of the

'859 patent.  Plaintiffs object, asserting that the record is

sufficiently developed for the court to ascertain the legal

meaning and scope of the '859 patent without the need for an

evidentiary hearing. The court disagrees, and for the reasons discussed below, will schedule a <u>Markman</u> hearing.

## Discussion

The '859 patent teaches a process for copper coating circuit boards, the first step in creating a printed circuit board. Part of that coating process involves the use of a surface active agent, or "surfactant." A substantial portion of the parties' dispute involves the type of surfactant actually claimed in the patent and whether MacDermid's allegedly infringing product employs any surfactant at all. Thus, the parties plainly disagree as to the meaning of the term "surfactant," as used in the '859 patent. MacDermid says the parties also disagree as to the meaning of the terms "micro-roughened" and "conversion-coated," as used in the patent. Plaintiffs, on the other hand, appear to dispute that point (or, at a minimum, suggest that any disagreement as to the meaning of those two terms is not relevant).

2

As the Court of Appeals for the Federal Circuit has observed:

> A literal patent infringement analysis involves two steps: the proper construction of the asserted claim and a determination as to whether the accused method or product infringes the asserted claim as properly constructed.

Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1581-82 (Fed. Cir. 1996) (citing Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517 U.S. 37 (1996)). Step one of that process - claim construction - is a question of law to be resolved by the court. See Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999). The second step - the determination of whether the accused process or device infringes the patent - is a question of fact. Id.

In interpreting an asserted claim, the court must first consider the intrinsic evidence of record, which includes: (1) the patent itself, including the words of the claims and the specification; and, if in evidence, (2) the prosecution history, which contains "the complete record of all proceedings before the

3

Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." Vitronics, 90 F.3d at 1582. Extrinsic evidence, on the other hand, includes evidence that is external to the patent, "such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles." Pitney-Bowes, 182 F.3d at 1308 (citing Vitronics, 90 F.3d at 1584).

In Vitronics, the court observed that, "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence." Id., at 1583. In light of that admonition, plaintiffs assert that the court need not conduct a Markman hearing and, even if it were to conduct such a hearing, this case does not present one of the rare situations in which it is appropriate to receive expert testimony or to consider other forms of extrinsic evidence. Instead, say plaintiffs, the intrinsic evidence of record is sufficient to construe the scope and meaning of the '859 patent.

4

The processes taught by the various claims of the '859 involve highly technical chemical and thermal reactions.  Thus, at a minimum, expert testimony would be helpful in informing the court of the knowledge likely possessed by one skilled in the relevant art.  Moreover, notwithstanding plaintiffs' assertions to the contrary, not only would such expert testimony be useful, it is <u>not</u> barred by the court's opinion in <u>Vitronics</u>.  As the Court of Appeals for the Federal Circuit has pointed out:

> <u>Vitronics</u> does not prohibit courts from examining extrinsic evidence, <u>even where the patent document is itself clear</u>.  Moreover, <u>Vitronics</u> does not set forth any rules regarding the admissibility of expert testimony into evidence.  Certainly, there are no prohibitions in <u>Vitronics</u> on courts hearing evidence from experts.  Rather, <u>Vitronics</u> merely warned courts not to rely on extrinsic evidence in claim construction to contradict the meaning of claims discernible from thoughtful examination of the claims, the written description, and the prosecution history - the intrinsic evidence.

<u>Pitney Bowes</u>, 182 F.3d at 1308 (citations omitted) (emphasis supplied).  Consequently, the court concluded:

> Thus, under <u>Vitronics</u>, it is <u>entirely appropriate, perhaps even preferable, for a court to consult trustworthy extrinsic evidence</u> to ensure that the claim construction it is tending to from the patent file is

not inconsistent with the clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field. <u>This is especially the case with respect to technical terms</u>, . . . . Indeed a patent is both a technical and a legal document. While a judge is well-equipped to interpret the legal aspects of the document, he or she must also interpret the technical aspects of the document, and indeed its overall meaning, from the vantage point of one skilled in the art. Although the patent file may often be sufficient to permit the judge to interpret the technical aspects of the patent properly, <u>consultation of extrinsic evidence is particularly appropriate to ensure that his or her understanding of the technical aspects of the patent is not entirely at variance with the understanding of one skilled in the art</u>.

<u>Pitney Bowes</u>, 182 F.3d at 1309 (emphasis supplied). <u>See also</u> <u>Key Pharmaceuticals v. Hercon Labs. Corp.</u>, 161 F.3d 709, 716 (Fed. Cir. 1998).

In light of the foregoing, and because the relevant technical field in which the '859 patent operates involves highly complex chemical and thermal reactions with which the court is unfamiliar, expert testimony will be of assistance in, at least, providing the court with an understanding of the knowledge possessed by one skilled in the pertinent art.

6

## Conclusion

Defendant's motion for a <u>Markman</u> hearing (document no. 103) is granted. On or before March 16, 2001, the parties shall confer and file with the court a written statement specifically identifying the claim language in dispute. Prior to April 13, 2001, the parties shall file legal memoranda and supporting evidence on claim construction. The court will then schedule a <u>Markman</u> hearing, at which each party will have the opportunity to call not more than two technical experts.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 13, 2001

cc:  Howard J. Susser, Esq.
     Garry R. Lane, Esq.
     John M. Delehanty, Esq.
     James K. Robertson, Esq.
     Steven M. Gordon, Esq.
     Steven M. Bauer, Esq.